```
        IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF OHIO
                   EASTERN DIVISION
```

Patrick M. Woodruff,             :

    Plaintiff,               :

  v.                             :       Case No. 2:13-cv-0224

                                            :       JUDGE GEORGE C. SMITH
Commissioner of Social Security,         Magistrate Judge Kemp

    Defendant.               :

## REPORT AND RECOMMENDATION

### I. Introduction

Plaintiff, Patrick M. Woodruff, originally filed suit in 2011 seeking review of a decision of the Commissioner of Social Security denying his September 27, 2006 application for supplemental security income.  See Case No. 2:11-cv-0061 (S.D. Ohio).  The Court remanded that case to the Commissioner pursuant to 42 U.S.C. §405(g), sentence four, concluding that the Administrative Law Judge had not adequately explained why the opinions of two medical sources, Dr. Polite and Dr. Chun, were rejected, and also directing further consideration of potential conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles.

After remand, another ALJ conducted a hearing on October 12, 2012.  The hearing covered not only the original application for SSI, but new applications for both SSI and disability benefits which were filed concurrently on January 10, 2010.  In a decision dated November 13, 2012, the ALJ denied all of Plaintiff's applications.  That became the final decision of the Commissioner on January 13, 2013.

After Plaintiff timely filed this case, the Commissioner filed the administrative record on May 20, 2013.  Plaintiff filed

his statement of specific errors on July 11, 2013.  The Commissioner filed a response on November 1, 2013.  Plaintiff did not file a reply brief, and the case is now ready to decide.

   II.  Plaintiff's Testimony at the Administrative Hearings

   The Report and Recommendation filed in Case No. 2:11-cv-61 (Doc. 21) summarized Plaintiff's testimony at the first administrative hearing this way:

> Since 1993, plaintiff has not worked on a full-time basis.  He was incarcerated from 1995 to 1998, which prevented him from working.  He then took a series of temporary jobs but his health deteriorated and he could not work full-time.  His most significant health problem was back and neck pain.
>
> Plaintiff testified that he has constant pain in the center part of his back, which is only partially relieved by medication.  He had recently begun taking methadone for pain, and Vicodin before that.  Walking and standing exacerbate his pain.
>
> On a daily basis, plaintiff testified that he has to change positions to alleviate his pain.  He has undergone physical therapy, and no surgery has been suggested.  He has also been diagnosed with diabetes but he is not insulin-dependent.  On a weekly basis he experiences fatigue, dizziness, tingling in the feet and hands, and loss of appetite.  In addition, he takes medication for high blood pressure.
>
> Plaintiff believed he could sit for 45 minutes at a time and stand for a similar period.  He can walk four blocks and can lift about 45 pounds.  He lives with his sister and helps take care of her household, including caring for her two children.  He is able to mow grass and do laundry, cook, wash dishes, sweep, and mop.
>
> In response to additional questions from the ALJ, plaintiff stated that in 2003 he worked full-time at a meat packing factory for six or seven months.  The work included butchering and required him to lift 45 to 60 pounds.  He also worked, through the temporary agency, at other laborer jobs.

Id. at 2.

   At the second administrative hearing, Plaintiff added this

testimony (Tr. 479-98). At the time of the hearing, Plaintiff was living with his sister and her two sons. He was receiving assistance from the Department of Job and Family Services, and also received food stamps. He had not worked or looked for work since the last hearing. His last job was in a garment factory in prison, where he was a sewing machine operator, a production manager, and a mechanic. All of these jobs could involve heavy lifting as well as standing for the majority of the day, except for the sewing machine operator, which was performed while sitting down.

In 2009, plaintiff had been riding a bicycle for exercise several times per week. He had modified it to support his back. However, it eventually became too painful for him to mount and dismount from the bike. He still took morphine, Vicodin, and Naproxen for pain. He used an inhaler as well and was taking medication for diabetes, high cholesterol, and high blood pressure. His medications caused drowsiness and dizziness throughout the day. He would also lie down about four hours out of eight in the day. He cleaned his room and did his own laundry, but did not help with other chores. When not sleeping during the day, Plaintiff did puzzles or read, and also watched television. He did not engage in social activities because they would not permit him to lie down as needed.

Finally, Plaintiff testified to having issues with cramping in his left hand, which would prevent him from using it on a continuous basis. He also experienced pain when reaching with his left arm. He is left-handed.

### III.  The Medical Records

The new medical records in this case are found beginning on page 772 of the administrative record. The Court summarizes the pertinent records as follows, relying on its summary of the pre-2009 records contained in the prior case, and describing in

detail only the new medical records submitted in connection with Plaintiff's more recent applications and as part of the proceedings on remand.

In the prior Report and Recommendation, the Court reviewed medical records dating from 2006 to 2008. In brief, those records showed that Plaintiff was treated for back and neck pain in 2005 and 2006; that he reported a left shoulder injury as well; that a form completed by Dr. Polite either in 2004 or later contained limitations on standing and walking inconsistent with performing a full range of light work; and that Dr. Chun completed a form in 2008 limiting plaintiff to no more than four hours of sitting, standing and walking in a work day. See Case No. 11-cv-61, Doc. 21, at 3-5.

The first of the new records which is significant is a form completed by Dr. Shanks in response to a query by the Bureau of Disability Determination dated March 1, 2010. Dr. Shanks responded that she had first seen Plaintiff on October 5, 2009 and last saw him on January 11, 2010. She described his conditions as moderate to severe lower back pain, degenerative disc disease, and an arachnoid cyst on the thoracic spine. She noted that he had muscle spasms in his lower back and a limited range of motion. She said he had no ability to do fine or gross manipulation, although she did not explain why. The remainder of that form (Tr. 808-09) does not appear to be in the record, but Dr. Shanks completed a similar form several months later in which she stated that Plaintiff could not lift or carry more than a minimal amount of weight, could not stand for more than an hour at a time, and could not sit for more than one to two hours at a time without interruption. On that form, she said he could perform fine manipulation frequently and gross manipulation occasionally and that he needed an at-will sit/stand option. She did not express any view on how many total hours he could sit,

stand or walk during a work day. (Tr. 882-83). She later filled out yet another form on which she indicated that Plaintiff could not sit more than four hours a day and walk or stand more than one hour. (Tr. 1087-88). The notes of treatment which appear in the pages of the record between the first two forms show that Dr. Chun provided most of the treatment during 2009 and that medication was helping Plaintiff tolerate longer periods of activity, that he was exercising three or four times a week, and that the examination of his back was frequently described as "nontender, no deformity, no defect." There are some notes from Dr. Shanks' treatment of Plaintiff (or from other physicians in her office) in 2011 and 2012; they show his back pain to be "well controlled on current regimen" (*e.g.*, Tr. 1110) or "stable on current regimen," (Tr. 1123). One note also indicates "good mobility." (Tr. 1139). None of them contain any significant new test results relating to the back condition, and some show that, on examination, he exhibited a normal range of motion. A note from July, 2012 reports that "Mr. Woodruff is doing well today with his chronic pain under control." (Tr. 1311).

Dr. McCloud, a state agency physician, completed a physical residual capacity evaluation report on April 23, 2010. He thought Plaintiff could do a relatively full range of light work with some postural restrictions secondary to back pain. (Tr. 874-81). Dr. Bolz, who had the benefit of reviewing some additional records, noted on September 16, 2010 that none of them showed any new symptoms and that the prior evaluation by Dr. McCloud was accurate. (Tr. 886).

### IV. The Vocational Testimony

A vocational expert, Mr. Coleman, testified at the second administrative hearing. His testimony begins at page 498 of the record.

Mr. Coleman was asked questions about someone who was

Plaintiff's age and had his educational background, and who could work at the light exertional level.  That person could not climb ropes, ladders or scaffolds, but could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.  Also, he could not reach overhead with his left arm.  Mr. Coleman responded that such a person could perform jobs such as parking lot attendant, storage facility rental clerk, and bench assembler.  There would be slightly fewer than 1000 such jobs in the regional economy and over 150,000 in the national economy.  If the same person could only stand or walk for four hours in a work day but could sit without restriction, or if he were required to change positions approximately every thirty minutes, the person could still do those jobs.  Additionally, someone who was limited to simple, repetitive tasks requiring no more than occasional interaction with others and who could not be subject to strict time and production quotas or a fast work pace could do the bench assembler job and jobs such as mail sorter, hand packager, and routing clerk.  If plaintiff was limited in his ability to reach in all directions with his dominant arm, he could not do any light unskilled jobs but he could perform sedentary work as a surveillance system monitor, food and beverage order clerk, or addresser and address clerk.  Finally, if plaintiff were as limited as he testified, he could not work.

V.  The Administrative Law Judge's Decision

The most recent Administrative Law Judge's decision appears at pages 450 through 463 of the administrative record.  The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff had not engaged in substantial gainful activity after his application date of September 27, 2006.  As far as Plaintiff's impairments are concerned, the ALJ found that Plaintiff had severe impairments including diabetes mellitus, hypertension,

coronary artery disease (poorly documented), carotid artery disease, morbid obesity, an arachnoid cyst of the lumbar spine, plantar fasciitis, chronic obstructive pulmonary disease, dysthymia, and a generalized anxiety disorder.  The ALJ also found that Plaintiff's impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform a significant range of light work.  However, Plaintiff could not climb ropes, ladders or scaffolds, could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, could not reach overhead with his left arm, had to alternate positions every thirty minutes, was limited to simple, repetitive tasks requiring no more than occasional interaction with others, and could not be subject to strict time and production quotas or a fast work pace.  In reaching this conclusion, the ALJ specifically gave little weight to the opinions expressed by the three treating sources - Drs. Polite, Chun and Shanks - as to the extent of Plaintiff's physical limitations, and gave great weight to the opinion of Dr. McCloud, the state agency reviewer.

At the final step of the analysis, the ALJ found that Plaintiff had no past relevant work but that he could do some of the jobs identified by the vocational expert such as bench assembler, mail sorter, hand packager, and router or routing clerk.  The ALJ further determined that such jobs existed in significant numbers in the regional and national economies. Consequently, the ALJ concluded that Plaintiff was not entitled to benefits.

### VI. <u>Plaintiff's Statement of Specific Errors</u>

In his statement of specific errors, Plaintiff raises three

discrete issues as part of his claim that the ALJ made a determination of Plaintiff's residual functional capacity which is against the weight of the evidence and premised on legal error: (1) that the ALJ did not set forth good reasons for giving little weight to Dr. Polite's opinion; (2) that the ALJ neither used the factors set forth in 20 C.F.R. §404.1527(d) nor identified good reasons for giving Dr. Chun's opinion little weight; and (3) that the ALJ made the same mistake when evaluating Dr. Shanks' opinion.  The Court reviews Plaintiff's contentions using this legal standard:

Standard of Review.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is

supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

The Court of Appeals recently, and succinctly, set forth the legal standard for reviewing an ALJ's evaluation of opinions of treating sources. In Gayheart v. Commissioner of Social Sec., 710 F.3d 365, 375-76 (6th Cir. 2013), the Court said:

> As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), id. § 404.1502, 404.1527(c)(1), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source"), id. § 404.1502, 404.1527(c)(2). In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." Soc. Sec. Rul. No. 96-6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).
>
> The source of the opinion therefore dictates the process by which the Commissioner accords it weight. Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, id., as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence, id. § 404.1527(c)(2)-(6).
>
> The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. Id. § 404.1527(c)(2). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the

> reasons for that weight." Soc. Sec. Rul. No. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir.2004).

In that case, the Court found that the ALJ's decision-making process did not conform to these principles because the ALJ did not provide good reasons for refusing to give controlling weight to the opinion of the treating source; rather, his general reference to the opinion's lack of support from objective findings was "ambiguous" because the Court could not deduce whether the findings which did support it were not objective, or whether they were objective but did not support the opinion. That flaw stemmed from the fact that the ALJ did "not identify the substantial evidence that is purportedly inconsistent with [the treating doctor's} opinions" and that the ALJ could not properly refer only to the conflicting opinions of non-treating sources. Id. at 377. The failure to identify specifically, rather than generally, such inconsistent evidence has led to remand in other cases as well. See, e.g., Tilton v. Colvin, 2013 WL 2456097, *5 (S.D. Ohio June 6, 2013)("cursory statements of the ALJ are insufficient to permit a meaningful review of whether the ALJ properly applied the controlling weight test"), adopted and affirmed 2013 WL 4048237 (S.D. Ohio Aug. 9, 2013).

Plaintiff attacks the ALJ's rejection of all three treating source opinions as failing to satisfy the "good reason" rule. That challenge requires close scrutiny of what the ALJ actually said about those opinions.

Starting with Dr. Polite, the ALJ provided, as reasons for assigning his opinion little weight, that it predated Plaintiff's onset date by two years, that Dr. Polite was a family practitioner, and that the manipulative limitations he imposed

were not supported by the evidence of record.  That is, for the most part, a sufficient statement of reasons, especially given the ALJ's earlier finding that the medical evidence did indicate that plaintiff could manipulate fine objects (Tr. 459). Plaintiff's argument that after the opinion was rendered, Dr. Polite continued to treat him even up to his alleged onset date, is largely irrelevant to the validity of the 2004 opinion, which clearly could not have been based on any subsequent treatment history.  Also, as the ALJ noted, many of the restrictions imposed by Dr. Polite were less severe than those found by the ALJ.  The ALJ's rejection of Dr. Polite's opinion therefore provides no basis for reversing his decision.

    Turning next to Dr. Chun, the ALJ rejected her opinion about the limitations on Plaintiff's ability to sit or stand for more than four hours in a workday because the "assertion that the claimant was essentially bed-ridden about 50 percent of the day is not supported by any credible or reliable evidence." (Tr. 460).  The ALJ also noted that clinical notes did not refer to any signs such as weakness, abnormalities in gait or posture, sensory loss or reflex changes which would support such an opinion.  The ALJ pointed out, with specific references to the record, where those findings appeared.  Although the ALJ also commented, more generally, that Dr. Chun's opinion was "generally inconsistent with the totality of the medical record and the other credible opinion evidence" - a statement that potentially creates the issue identified in Gayheart - the specificity contained in the balance of the reasoning process saves the analysis.  The fact that, as Plaintiff points out, there was also evidence to support Dr. Chun's views, in addition to evidence conflicting with them, is not enough to undermine the ALJ's decision, especially where treatment notes subsequent to her opinion do not seem to bear out the type of significant restrictions in sitting and standing which she imposed.  It is

-11-

also helpful to note that the ALJ both found that Plaintiff did have significant restrictions in sitting and standing, concluding that he did need a sit/stand option, and that the vocational expert testified that Plaintiff could do jobs even if he were restricted to sedentary work.

Finally, the Court considers the ALJ's treatment of the opinions of Dr. Shanks. The ALJ's discussion of her views is much more limited; he stated only that he gave her opinions "little weight as they are internally inconsistent, their limitations are less restrictive than the residual functional capacity assessed above, and they are inconsistent with the longitudinal evidentiary medical record." (Tr. 461).

The second of the three stated reasons for rejecting Dr. Shanks' opinion is not a reason at all; it is simply a descriptive statement to the effect that she and the ALJ differed in how they assessed Plaintiff's functional capacity. The other two statements are made at the highest level of generality. The ALJ neither articulated the internal inconsistencies which supposedly exist, nor did the ALJ identify any single part of the "longitudinal evidentiary medical record" which supposedly conflicts with Dr. Shanks' conclusions.

The Commissioner's argument on this point focuses, first, on the statement - not actually made by the ALJ - that Dr. Shanks' opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques. Since the ALJ made no finding on that issue, the Court may not sustain the decision on that basis. As far as consistency with the balance of the evidence is concerned, the Commissioner's memorandum notes inconsistencies and refers to statements made by Dr. Miller in 2007 and Dr. Chun in 2008 directed to the impact of Plaintiff's arachnoid cyst. This argument is not persuasive, both because the ALJ's decision does not engage in this analysis and because the record is clear that Dr. Shanks treated Plaintiff for

conditions other than an arachnoid cyst, including his low back pain, which could account for the restrictions she imposed.  The ALJ's discussion of this opinion is simply too scanty and too devoid of specific references to the record to allow the Court to determine why, exactly, the ALJ did not credit Dr. Shanks' opinion, or at least give it some weight.  In that latter regard, it is also evident that the ALJ did not refer to or discuss any of the factors set forth in §404.1527 which must be analyzed once a treating source's opinion is not assigned controlling weight.

This leaves open the question of whether this error might be harmless.  The Commissioner has not made that argument.  Wilson recognized that not every failure by an ALJ to articulate good reasons for rejecting a treating physician's opinion constitutes reversible error.  That decision described three different scenarios in which the error could be considered harmless: "if (1) 'a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it'; (2) 'if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion'; or (3) 'where the Commissioner has met the goal of § 1527(d)(2)—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation.'" Friend v. Comm'r of Social Security, 375 Fed. Appx. 543, 551 (6th Cir. April 28, 2010), quoting Wilson, 378 F.3d at 547.

None of those scenarios is present in this case.  There is enough supporting evidence in the record, including the similar opinion expressed by Dr. Chun, to undermine any argument that Dr. Shanks' opinion could not be credited under any circumstances.  Further, the ALJ did not adopt Dr. Shanks' findings or make findings consistent with her opinion.  Finally, the goal of §404.1527 has not been met with respect to Dr. Shanks' opinion; the ALJ did not articulate his reasoning process with enough specificity either to allow the Plaintiff to understand it or

-13-

this Court to review it.  Consequently, even if this Court "were to agree that substantial evidence supports the ALJ's weighing of [Dr. Shanks'] opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."  Blakley v. Comm'r of Social Security, 581 F.3d 399, 410 (6th Cir. 2009).  Under these circumstances - and especially where the prior remand in this case underscored the need for any rejection of the opinion of a treating source to be explained in sufficient detail - another remand is required.  See Hensley v. Astrue, 573 F.3d 263, 267 (6th Cir. 2009).

## VII.  Recommended Decision

Based on the above discussion, it is recommended that the plaintiff's statement of errors be sustained to the extent that the case be remanded to the Commissioner of Social Security pursuant to 42 U.S.C. §405(g), sentence four.

## VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District

-14-

Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

                                           /s/ Terence P. Kemp
                                           United States Magistrate Judge